On January 2, 1997, appellees, William and Cheryl Every, filed a complaint seeking legal custody of Donna Stark, a minor child born September 5, 1993. Appellees are the child's maternal great aunt and uncle. Mother of the child is appellant, Stacey Starks. A hearing before a magistrate was held on January 13, 1999. By decision filed January 19, 1999, the magistrate found appellant was unsuitable to parent the child and awarded legal custody to appellees. On January 29, 1999, appellant filed objections to the magistrate's decision. By judgment entry filed April 2, 1999, the trial court overruled the objections and approved and adopted the magistrate's decision. Appellant filed an appeal and this matter is now before this court for consideration. Assignment of error is as follows:
 I THE TRIAL COURT'S FINDING THAT THE APPELLEE NATURAL MOTHER IS INSUITABLE TO PARENT THE MINOR CHILD, DONNA STARKS, AGE 5, BORN SEPTEMBER 5, 1993, IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 I
Appellant claims the trial court's determination that she was unsuitable to parent and the best interests of the child warranted an award of custody to appellees was against the manifest weight of the evidence. We disagree. This case involves a custody dispute between the child's mother and the child's maternal great aunt and uncle. In the case of In re Perales (1977), 52 Ohio St.2d 89, the Supreme Court of Ohio reviewed a child custody proceeding between a parent and a nonparent and issued the following syllabus: In an R.C. 2151.23(A)(2) child custody proceeding between a parent and a nonparent, the hearing officer may not award custody to the nonparent without first making a finding of parental unsuitability-that is, without first determining that a preponderance of the evidence shows that the parent abandoned the child, that the parent contractually relinquished custody of the child, that the parent has become totally incapable of supporting or caring for the child, or that an award of custody to the parent would be detrimental to the child.
In Perales at 98-99, Justice Herbert Brown further explained the following: It is the last criteria, other unsuitability, which allows the court to balance the interests of parent and child and avoid operating under the premise criticized in Boyer v. Boyer, supra, at page 87, that `the child's right to a suitable custodian and parental rights, when not in harmony, are competing interests, requiring that one give way to the other.' (Emphasis added.) If courts dealing with the general concept of suitability measure it in terms of the harmful effect of the custody on the child, rather than in terms of society's judgment of the parent, the welfare of the child should be given the priority which is called for in the Clark opinion.
Once the court determines that the parent has forfeited custody or that parental custody would be detrimental to the child, it must indicate that a preponderance of the evidence militates against parental custody by making a finding of unsuitability.
The scope of our review is limited to determining if the record supports the finding of unsuitability and that the interests of the child is best served in the custody of appellees. A judgment supported by some competent, credible evidence will not be reversed by a reviewing court as against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction Co. (1978),54 Ohio St.2d 279. A reviewing court must not substitute its judgment for that of the trial court where there exists some competent and credible evidence supporting the judgment rendered by the trial court. Myers v. Garson (1993), 66 Ohio St.3d 610. The trial court found appellant had never provided full time care of the child; has a variety of mental and physical problems and is legally blind; takes fourteen prescription drugs daily; has failed to establish independent living to care for and meet the needs of the child; is subject to blackouts from seizures; and has demonstrated a "proclivity to make bad decisions that are potentially harmful to her child." See, Magistrate's Decision filed January 19, 1999, approved and adopted by the trial court via Judgment Entry filed April 2, 1999. The child was born during appellant's incarceration on a felony conviction. As a result of her incarceration, appellant chose to place her child with her mother, Kay Starks. T. at 130. At the time, Ms. Starks was living with her mother, the child's great grandmother, Maxine Johnston. T. at 81. For four years, the child remained with Ms. Starks and Ms. Johnston even though appellant was released from prison two months after the child's birth. T. at 88-89, 130. Appellant did not support the child except for purchasing some clothes and minimal groceries. T. at 141. Appellant cared for the child when she visited her on the weekends. T. at 8, 31, 132. This arrangement continued for four years with appellant just "getting ready" at the end of 1998 to assume day to day care of the child. T. at 132-133. Although appellant claims to be able to care for herself and her child (T. at 140), she never attempted in four years to assume the total care of her child. It is undisputed even by appellant that she has a myriad of physical and emotional problems (legally blind, kidney disease, diabetes, seizures, blackouts and depression). T. at 137-138. Appellant takes some fourteen medications plus vitamins for these problems. T. at 5. The home the child lived in with Ms. Stark and Ms. Johnston was described as dirty, unclean, in disrepair and unsuitable for raising a child. T. at 10, 14, 25-26, 53-55, 57. Since the child has been in appellees' custody (Christmas 1997), appellant has by her own admission only called the child three times. T. at 66-67, 127. During the four years the child was with Ms. Stark and Ms. Johnston, the child's medical and dental needs were not taken care of. T. at 77, 153-154. The child demonstrated poor hygiene, poor eating habits and poor social skills. T. at 60-62. Appellant attempted to explain away her indifference to the child and her failure to assume care by claiming the Holmes County Children Services Department would harass her and take away the child by lying about her. T. at 135-137. Based upon the facts presented, there is evidence of technical abandonment and a lack of ability to care for the child. It is clear the best interests of the child was to be removed from the unsuitable environment with Ms. Starks who had no desire for custody of the child. We find the evidence satisfies the burden set forth in In re Perales. The sole assignment of error is denied.
The judgment of the Court of Common Pleas of Richland County, Ohio, Juvenile Division is affirmed.
By Farmer, J. Wise, P.J. and Gwin, J. concur.